UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KRISTIN WALKER

                          Plaintiff,

    v.                                                **DECISION AND ORDER**
                                                                          11-CV-766S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

    1.    Plaintiff, Kristin Walker, challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Walker alleges that she has been disabled since September 5, 2007, and that her impairments render her unable to work. She therefore asserts that she is entitled to disability insurance benefits ("benefits") under the Act.

    2.    Walker filed an application for benefits under Title II of the Act on February 12, 2008. The Commissioner of Social Security ("Commissioner") denied her application, and as result, she requested an administrative hearing. She received that hearing before ALJ Timothy M. McGuan on May 7, 2010. The ALJ considered the case *de novo*, and on May 21, 2010, he issued a decision denying Walker's application for benefits. Walker filed a request for review with the Appeals Council, but the Council denied that request, prompting her to file the current civil action on September 12, 2011, challenging Defendant's final decision.[1]

    3.    On May 18, 2012, the Commissioner filed a motion for judgment on the

---

[1] The ALJ's May 21, 2010 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Walker followed suit by filing her own motion for judgment on the pleadings the following month. Briefing on the motions concluded July 16, 2012, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted and Walker's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other

words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.   The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.   This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.   Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Walker has not engaged in substantial gainful activity since her alleged onset date, September 5, 2007 (R. 12);[2] (2) Walker has several severe impairments, including mild L2-3 disease, fibromyalgia, obesity, and dependant personality disorder (R. 12); (3) Walker does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. 18); (4) Walker is unable to perform her past relevant work as a security guard or pharmacy technician (R. 24); (5) but, as long as she has the option to sit or stand, she retains the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b). (R. 20.) Ultimately, the ALJ concluded that Walker was not under a disability as defined by the Act from her onset date through the date of the decision. (R. 25.)

10. Walker raises three challenges to the ALJ's decision: First, she argues that the ALJ erred by failing to expand the record; second, she argues that the ALJ failed to properly consider the negative effects of sleep apnea and obesity; finally, she contends

---

[2]Citations to the underlying administrative record are designated "R."

4

that the ALJ did not properly evaluate her credibility. Each issue will be addressed in turn.

11.     Walker, who was under regular mental health treatment since December of 2008, contends that the ALJ neglected his duty to develop the record by failing to request treatment notes from various mental health treatment sessions. Walker points out that at the disability hearing, ALJ McGuan asked if the record was complete. Her attorney responded by noting that Northwest Community Mental Health Services ("Northwest") – the facility where Walker received treatment – refused to release treatment notes. She therefore explained to the ALJ that a subpoena might be required if the judge found them necessary to resolve the case. (R 32-33.) ALJ McGuan did not subpoena the records. And Walker finds error in this omission.

12.     There is no question that an ALJ has an obligation to develop the administrative record. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir.1998) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996)). But that duty only arises only where an ALJ lacks sufficient evidence to evaluate opinion evidence or make a disability determination. Ayers v. Astrue, No. 08–CV–69A, 2009 WL 4571840 (W.D.N.Y. Dec.7, 2009) (citing Rebull v. Massanari, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002); see also 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision"); 20 C.F.R. § 404.1527(c)(3) ("If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence . . . .").

13.     Thus, an ALJ does not have an affirmative duty to expand the record *ad*

*infinitum*. Instead, he or she must only develop it when there are gaps in the record, or when the record serves as an inadequate basis on which to render a decision. See id.  In this case, although ALJ McGuan did not have the full treatment notes from Walker's mental health sessions, he did have two detailed reports, one dated June 29, 2009 and the other dated March 26, 2010, which were signed by both Walker's psychiatrist, Dr. D.V. Gunderia, and Northwest's Director of Clinical Services, Anne Kabatt.  These notes essentially serve as a summary of her treatment. They explain Walker's treatment history, the issues she presented with, her use of medication, and the progress that she has made throughout her treatment. (R. 333-334, 543-544.) In this sense, there were no gaps in the record.

      14.    Further, Walker points to only one potential problem with the ALJ's decision not to subpoena further records. When discussing Walker's claim that she has difficulty paying attention, ALJ McGuan wrote, "[N]o evidence establishes that she told this to any treating source." (R. 19.) Walker surmises that evidence of this complaint might be found in the missing treatment notes. But, even assuming that evidence of this nature could be found in those notes, remand is not required. Indeed, McGuan gave Walker "the benefit of the doubt" regarding her credibility on this issue and determined that she has "moderate difficulties" regarding concentration. (R. 19.) ALJ McGuan thus does not discredit Walker's statement, rendering unnecessary further development of record to substantiate her contention. Rather, based on this statement and the remainder of the record, ALJ MCGuan determined that Walker's impairments in this context were simply not "marked." Considering that both psychologist Dr. Thomas Ryan and psychiatrist Dr. H. Tzetzo found – at most – moderate difficulties with her ability to maintain concentration (R. 232, 256-257), and considering that she could handle her own finances, follow written and oral instructions, cook, clean, and read, this Court finds no error in that decision. See 20 C.F.R.

Pt. 404, Subpt. P, App. 1 § 12.00(C) (a marked limitation arises when several activities or functions are impaired, or when the degree of limitation seriously interferes with ability to function independently, appropriately, effectively, and on a sustained basis). Accordingly, Walker's motion, on this ground, is denied.

15. Turning to Walker's next objection, this Court finds that ALJ McGuan did properly weigh the adverse effects of sleep apnea and obesity. Regarding obesity, the ALJ cited SSR 02-1p, the Commissioner's ruling concerning the evaluation of obesity in disability claims, and he noted that obesity may adversely effect other impairments. (R. 18.) He also considered the potential limits obesity places on a claimant's ability to sustain physical activity. (R. 18.) Furthermore, he took these limitations into account when determining her RFC, finding that she could not perform past relevant work and, while she could perform light work, she must have the option to sit or stand due to excessive stress on her lower-body. In fact, ALJ McGuan's finding in this regard was explicit: "The claimant's obesity results in the lift residual functional capacity with the option to sit or stand, and mainly affect much of what she can do." (sic) (R. 24.) Though inelegantly phrased, the message is clear enough: ALJ McGuan accounted for Walker's obesity in determining her RFC.

Regarding Walker's sleep apnea, a February 29, 2008 study revealed that this impairment was only "mild to moderate." (R. 215.) The doctor recommended that she use a CPAP machine. (R. 215.)

Notably, aside from generally noting that ALJ McGuan did not extensively discuss this disorder, Walker can point to no specific evidence that the ALJ overlooked regarding the sleep apnea. Indeed, there appears to be no evidence suggesting that this disorder, even in conjunction with other impairments, rendered her unable to perform light work.

Accordingly, her motion, on this ground, is denied. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say.").

16.     Last, Walker argues that ALJ McGuan improperly evaluated her credibility. When considering a plaintiff's subjective reports, the ALJ must follow a two-step process. First, he must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms. SSR 96-7p. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit the plaintiff's functioning. Id. In making that evaluation, an ALJ must assess a plaintiff's credibility when such statements cannot be verified by objective medical evidence. Id.

The ALJ alone decides issues of credibility and this Court must give great deference to those decisions, as the ALJ observed the witness's testimony and demeanor. Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995); Serra v. Sullivan, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991).

Here, the ALJ found that Walker's impairments could reasonably cause the alleged symptoms, but that Walker's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible. This finding is consistent with the record. Although Walker takes issue with the fact that the ALJ did not acknowledge the reports of her physician, Dr. Gosy, regarding the pain she experiences when walking, she is able to perform various routine, daily activities – like cooking and laundry – that require her to be on her feet. (R. 43.) Moreover, these reports simply reflect Walker's own complaints. They are not objective findings.

And, as noted above, an examining psychologist and psychiatrist found only

moderate limitations in her ability to concentrate. Dr. Tzetzo further found that her understanding and memory were "not significantly limited." (R. 256.) Nor did she have significant limitations in her social skills or ability to adapt. (R. 257.) For his part, ALJ McGuan also noted that she displayed no trouble concentrating at the hearing. His determination that she could perform light work, with the option to sit or stand, is therefore supported by substantial evidence.

17.  This Court is satisfied that the ALJ afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings, and deny Plaintiff's motion for the same relief.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: September 25, 2012
       Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court